IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and COMMONWEALTH OF VIRGINIA, SECRETARY OF NATURAL RESOURCES, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 5:24-cv-108-MFU-JCH ) |
| FMC CORPORATION, | ) ) |
| Defendant. | ) ) ) |

**PLAINTIFFS' UNOPPOSED MOTION TO ENTER CONSENT DECREE**

On December 18, 2024, the United States and the Commonwealth of Virginia ("Plaintiffs") lodged with this Court a proposed Consent Decree with FMC Corporation ("FMC") resolving claims for natural resource damages under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). The natural resource damages claims arose from decades of discharges of various hazardous substances from a manufacturing plant at the Avtex Fibers Superfund Site located in Front Royal, Virginia (the "Site" or "Avtex Site"), where FMC manufactured rayon and polyester fibers from 1963-1976.

The U.S. Department of the Interior and the Virginia Department of Environmental Quality are authorized to act on behalf of the public as trustees of natural resources (the "Trustees") in this matter pursuant to Section 107(f) of CERCLA, 42 U.S.C. § 9607(f), and the National Contingency Plan, 40 C.F.R. §§ 300.600-300.605 and 300.615. Under the proposed Consent Decree, FMC will pay a total of $1,674,361 to resolve its natural resource damages liability. The United States, on behalf of several settling federal agencies ("SFAs"), will pay an additional $2,496,305. Consent Decree ¶¶ 7-9, ECF No. 2. The payments totaling $4,170,666

will fund natural resource damages restoration activities to compensate for the injured resources and the future restoration planning costs of the Trustees, and to reimburse the Trustees' costs of assessing the injuries to natural resources.

All parties support entry of the Consent Decree.

The United States solicited public comments on the proposed Consent Decree for a period of 30 days. 89 Fed. Reg. 106592 (Dec. 30, 2024). No comments were received from the public on the Consent Decree. As discussed below, the proposed Decree is fair, adequate, reasonable, and in the public interest. *See United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999). Agreement was reached after scientific analysis by the Trustees of the injuries caused by the contamination and lengthy negotiations between the parties involving experienced counsel. The Decree provides for funding of meaningful future natural resource restoration projects to restore, replace, rehabilitate and/or acquire the equivalent of injured natural resources, and avoids the significant expenditure of time and resources – as well as the delayed environmental benefit – that litigation would entail. Accordingly, Plaintiffs respectfully request that the Court approve and sign the Consent Decree lodged on December 18, 2024, and enter it as a final judgment in this matter.

## I. BACKGROUND

### A. AVTEX SITE CONTAMINATION AND REMEDIATION

The Site is located on the eastern shore of the South Fork of the Shenandoah River within the city limits of Front Royal, Virginia. A fibers manufacturing plant operated at the Site for nearly 50 years. Compl. ¶ 18, ECF No. 1. American Viscose Corporation ("AVC"), which is now defunct, constructed the plant and commenced rayon production in 1940. FMC acquired the

2

plant in 1963 and operated it until 1976, producing rayon, polyester and other fiber products. Avtex Fibers, Inc. ("Avtex") acquired the plant in 1976 and operated it until shutting it down in 1989 and going out of business. Over time, FMC, Avtex, and AVC had contracted with the federal government to manufacture rayon and other fibers for military and space applications. In 1990, FMC filed a CERCLA lawsuit alleging that the United States bore liability at the Site as a past owner, operator, and arranger under CERCLA for its activities at the facility during World War II. In 1992, a federal district court held the United States jointly and severally liable for Site contamination in *FMC Corporation v. United States*, 786 F. Supp. 471 (E.D. Pa. 1992), a decision upheld on appeal in *FMC Corporation v. U.S. Department of Commerce*, 29 F.3d 833 (3rd Cir. 1994).

The fibers plant utilized and generated a substantial amount of hazardous substances as waste over the course of its operational history, including polychlorinated biphenyls ("PCBs"), acids, carbon disulfide, zinc sludge, waste viscose, and fly ash. These hazardous substances were carried by a system of sewers from production areas to other parts of the Site, including waste disposal areas and a wastewater treatment plant. Compl. ¶ 20, ECF No. 1. Hazardous substances entered the South Fork of the Shenandoah River and groundwater through the sewers, unlined waste disposal basins, and other migration paths. *Id.* ¶ 22. After their release into the river, some of the persistent hazardous substances settled in bottom sediments both near the Site and downstream, resulting in the natural resource damages resolved by the Consent Decree.

Cleanup of contamination from the Site has been proceeding under a 1999 consent decree entered into by FMC and the United States, on behalf of the Environmental Protection Agency ("1999 Decree"). *United States v. FMC Corp.*, No. 5:99-cv-00054 (W.D. Va. Oct. 21, 1999). The

3

1999 Decree required FMC, among other things, to implement certain actions at the Site to address and remedy the release or threat of release of hazardous substances and to reimburse EPA for certain response costs. The cleanup actions have included closing and placing caps on waste disposal basins, treating contaminated groundwater, excavating toxic soils, and decontaminating and removing buildings and sewers. These response actions, however, have not directly addressed injuries to natural resources caused by the hazardous substance releases from the Site. Compl. ¶ 22, ECF No. 1.

### B. NATURAL RESOURCE DAMAGES ASSESSMENT ACTIVITIES

While cleanup efforts relating to contamination from the Avtex Site were underway, the Trustees began the process of assessing the nature and extent of natural resource injuries caused by the releases of hazardous substances at the Site. Under CERCLA, parties responsible for discharges of hazardous substances are liable to the United States and the States for natural resource damages caused by those discharges, including the costs of assessing such damages. 42 U.S.C. § 9607(a)(4)(C). This compensation is over and above the costs of cleaning up the contamination, and any sums the Trustees recover from liable parties are "for use only to restore, replace or acquire the equivalent of such natural resources." *Id.* § 9607(f)(1).

The term "natural resources" is broadly defined under CERCLA to include "land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and other such resources belong to, managed by, held in trust by, appertaining to, or otherwise controlled" by the Trustees, including the supporting ecosystems for such resources. *See id.* § 9601(16); 40 C.F.R. §§ 300.600(a), (b). Under applicable regulations, the Trustees assess the amount of damages needed to compensate for injuries or losses to natural resources. 43 C.F.R. §§ 11.80(b) & 300.615.

As a result of various natural resource damages assessment activities, the Trustees determined that hazardous substances, including zinc, carbon disulfide, and PCBs, have been released into the environment from the Site. In addition, benthic invertebrates, fish, mammals, and birds have likely been injured by exposure to these hazardous substances. The Trustees determined that the CERCLA response actions taken at the Site do not adequately address the natural resource damages. Consent Decree ¶ G, ECF No. 2.

Based on their damage assessment activities, regulatory standards, and scientific literature, the Trustees evaluated the injury to natural resources from exposure to high concentrations of zinc in surface water and sediment, and carbon disulfide in groundwater. The Trustees also reviewed data from the CERCLA response actions at the Site and other prior studies in the watershed to assess injuries to natural resources located at the Avtex plant and downstream where hazardous substances came to be located. The Trustees relied on an ecological service model to support their determinations of the type and magnitude of restoration efforts required to restore the injured natural resources and their services. Based on this model, the Trustees have concluded that the payments for damages by FMC and the SFAs under the Consent Decree are sufficient to compensate for the injuries to natural resources from the Site. *Id.* ¶¶ H-J.

### C.     CONSENT DECREE

#### 1.     **Consent Decree Negotiations**

After completing their assessment of natural resources, including quantification of damages, the Trustees commenced negotiations with FMC and the SFAs to resolve their natural resource damages claims. The parties disagreed over the amount of natural resource damages at issue and the extent of liability for the natural resource damages of FMC and the SFAs. The parties met on multiple occasions over a four-year period to work through technical and legal issues, and they exchanged numerous draft consent decrees before reaching final agreement.

The parties reached agreement on the settlement terms embodied in the proposed Consent Decree in 2024. On December 18, 2024, Plaintiffs filed a Complaint naming FMC under Section 107(a) of CERCLA, Section 311 of the CWA, and the Virginia State Water Control Law, Va. Code § 62.1-44.32. ECF No. 1. The Complaint alleged there had been an injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing the same, resulting from the releases of hazardous substances from the Avtex Site. Compl. ¶¶ 38-40, ECF No. 1. Plaintiffs lodged the proposed Consent Decree resolving these claims simultaneously with the filing of the Complaint on December 18, 2024. ECF No. 2.

#### 2.     **Settlement Terms**

The proposed Consent Decree imposes several separate payment obligations on FMC. The company agrees to pay:

> (1) $426,710 in Restoration Costs paid into the DOI Natural Resource Damage and Restoration Fund (NRDAR Fund) to be managed for the joint benefit and use of the Federal Trustee and the State Trustee for restoration, replacement, rehabilitation, and/or acquisition of the equivalent of natural resources and their services injured by the release of hazardous substances;
>
> (2) $521,900 in the Trustees' "RIM Costs" paid into the NRDAR Fund, which are the costs of restoration planning, oversight of implementation, and monitoring to be incurred

  by both Trustees in connection with the future restoration projects;

  (3) $275,751 paid directly to the Commonwealth of Virginia as compensation for injuries to groundwater resources of the Commonwealth;

  (4) $444,609.32 paid into the NRDAR Fund to reimburse DOI for its costs of assessing the natural resource damages; and

  (5) $5,390.68 paid to Virginia to reimburse its natural resource damages assessment costs.

Consent Decree ¶ 7.

  In addition, the United States will pay $2,496,305 into the NRDAR Fund on behalf of the SFAs to be used jointly by the Federal Trustee and State Trustee for restoration projects. *Id.* ¶ 9.

  In return, under the proposed Decree, the Trustees will provide FMC and the SFAs with covenants not to sue or take administrative action for natural resource damages arising from releases of hazardous substances at the Site known or reasonably ascertainable as of the date of lodging. *Id.* ¶¶ 16-18. The Decree contains a number of reservations of rights in favor of the Trustees, including for liability for failing to meet any requirements of the proposed Consent Decree. *Id.* ¶ 19. The Decree also contains a Special Reservation regarding natural resource damages, which reserves to the Trustees the right to pursue further natural resource damages claims against FMC and the SFAs in certain specified circumstances. *Id.* ¶ 20. Finally, the Decree provides contribution protection for FMC and the SFAs for matters addressed in the Decree. *Id.* ¶ 26. The Decree resolves all claims in the Complaint filed in this action.

## II.     STANDARD OF REVIEW

The standard to be applied in reviewing a proposed decree is whether the decree "is fair, adequate, and reasonable" and "not illegal, a product of collusion, or against the public interest." *North Carolina*, 180 F.3d at 581. Several overarching principles apply to the determination of whether a consent decree meets this standard. First, the court "should be guided by the general principle that settlements are encouraged." *Id.*; *see also United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990). This principle is "especially *apropos*" in complex environmental suits brought by the government which, if litigated to completion, would "consume a significant amount of time and expense by the parties, including the public fisc, along with a substantial redirection of judicial resources." *United States v. Arch Coal, Inc.*, 829 F. Supp. 2d 408, 416 (S.D. W. Va. 2011).

Second, the "presumption in favor of […] settlement is particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of a federal administrative agency … which enjoys substantial expertise in the environmental field." *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1436 (6th Cir. 1991). Under these circumstances, "broad deference should be afforded to [the agency's] expertise," *United States v. District of Columbia,* 933 F. Supp. 42, 47 (D.D.C. 1996), and the "district court must refrain from second-guessing the executive branch." *Cannons Eng'g*, 899 F.2d at 84; *see also United States v. CSX Transportation, Inc.*, No. 2:18-CV-1175, 2019 WL 97820, at *2 (S.D. W. Va. Jan. 3, 2019) ("The court is not only guided by the general principle that settlements are encouraged but must also provide additional deference because the settlement was negotiated by the Department of Justice on behalf of EPA").

Third, the consent decree must be reviewed in light of what it is – a settlement of claims and not a disposition after trial on the merits. *See United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990) (a consent decree "is not a decision on the merits or the achievement of the optimal outcome for all parties, but is the product of negotiation and compromise"). Thus, a decree may take into account "reasonable discounts for litigation risks, time savings, and the like that may be justified." *United States v. Davis*, 261 F.3d 1, 26 (1st Cir. 2001). And, in reviewing the consent decree, the standard is not whether the decree is "one which the court itself might have fashioned, or considers as ideal, but whether the proposed decree is fair, reasonable, and faithful to the objectives of the governing statute." *Cannons Eng'g*, 899 F.2d at 84; *CSX Transportation*, 2019 WL 97820, at *3 ("district courts should not attempt to 'modify the terms of a proposed settlement decree, nor should [they] participate in any bargaining for better terms,'" quoting *Plummer v. Chem. Bank*, 668 F.2d 654, 655 n.1 (2d Cir. 1982)).

### III.   ARGUMENT

Plaintiffs contend that the proposed Decree is fair, adequate, reasonable, and in the public interest. *See North Carolina*, 180 F.3d at 581. The natural resource damage assessment by the Trustees underlying the settlement terms, the arms-length settlement negotiations process, and the environmental benefit that will result from the settlement all demonstrate that the proposed Consent Decree is procedurally and substantively fair and consistent with CERCLA. Thus, it should be entered by this Court.

#### A.   THE CONSENT DECREE IS PROCEDURALLY FAIR.

Fairness is generally understood to include two components, procedural fairness and substantive fairness. *See Cannons Eng'g*, 899 F.2d at 86-88. Procedural fairness is typically

9

evaluated by looking at the negotiation process "to gauge its candor, openness, and bargaining balance." *Id.* at 86. Here, the Trustees spent several years evaluating the extent of natural resource injuries caused by releases of hazardous substances at the Avtex Site and the appropriate restoration techniques and their costs. Following this lengthy analysis, the parties entered into arms-length negotiations over the precise details of the assessment, including costs of restoration, to arrive at a settlement of the Trustees' natural resource damages claims.

The Trustees, FMC, and the SFAs were each represented in these negotiations by sophisticated and experienced counsel. Technical and legal issues were vigorously contested, and settlement was reached only after multiple meetings along with countless phone calls and emails, resulting in the exchange of several consent decree drafts. All this sufficiently demonstrates that the proposed Consent Decree is procedurally fair. *See United States v. ConocoPhillips Co.*, No. 2:10-CV-1556, 2011 WL 1113703, at *3 (W.D. La. Mar. 24, 2011) (natural resource damages consent decrees were procedurally fair where the parties "engaged in arms-length negotiation by experienced counsel" and "worked cooperatively to assess the injury and determine restoration alternatives in light of the evidence and potential litigation risks to the parties"); *Cannons Eng'g*, 899 F.2d at 84 ("that . . . [the] affected parties, themselves knowledgeable and represented by experienced lawyers, have hammered out an agreement at arm's length and advocate its embodiment in a judicial decree, itself deserves weight in the ensuing balance").

    **B.**    **THE CONSENT DECREE IS SUBSTANTIVELY FAIR, ADEQUATE, AND REASONABLE.**

Substantive fairness derives from concepts of "corrective justice and accountability: a party should bear the cost of the harm for which it is legally responsible." *Id.*, 899 F.2d at 87. Here, the proposed Decree is substantively fair in that it requires FMC and the SFAs, the parties

legally responsible for the releases of hazardous substances, to pay for the natural resource damages caused by the discharges, including the costs of assessing such damages. *See United States v. Bd. of Trs. of the Univ. of Illinois*, No. 07-CV-2188, 2008 WL 345542, at *2 (C.D. Ill. Feb. 7, 2008) (natural resource damages consent decree is substantively fair "in that it recovers the past costs of assessing the damages to natural resources and future restoration costs in a reasonable amount").

The Consent Decree is substantively fair, adequate, and reasonable because it is based on a scientific natural resource damages assessment process and appropriately compensates the public for natural resource injuries identified as a result of that process. The Trustees conducted site-specific injury studies and reviewed existing information, including remedial investigation data, ecological risk assessments, and scientific literature, to evaluate the nature and extent of injuries to natural resources. The Trustees then negotiated a settlement with FMC and the SFAs that will fund the implementation of restoration projects aimed at compensating for and addressing the natural resource injuries. It is anticipated that the future natural resource restoration projects will restore benthic invertebrates and provide multiple environmental benefits for the natural resources in the South Fork Shenandoah River and larger Shenandoah River watershed, all without resorting to costly and time-intensive litigation. *See United States v. Fort James Operating Co.*, 313 F. Supp. 2d 902, 910 (E.D. Wis. 2004) (natural resource damages consent decree was reasonable where the "only imaginable alternative to settlement would be complex and probably lengthy litigation").

    **C.**    **THE CONSENT DECREE SERVES THE PUBLIC INTEREST.**

Finally, the settlement is consistent with the goals of CERCLA and in the public interest. The natural resource damages provisions of CERCLA are designed to (a) compensate the public for injuries to natural resources, and (b) ensure that those responsible for that injury are held financially accountable. *See* 42 U.S.C. § 9607(a); 33 U.S.C. § 1321(f)(4). This settlement accomplishes both goals by recovering natural resource damages that the Trustees will use to restore or rehabilitate injured resources while at the same time holding FMC and the SFAs accountable for the releases of hazardous substances from the Avtex manufacturing facility. *See ConocoPhillips*, 2011 WL 1113703, at *3 (natural resource damages consent decrees were consistent with federal and state law where they required defendants to compensate for injuries to natural resources); *Fort James Operating Co.*, 313 F. Supp. 2d at 911 (natural resource damages consent decree was consistent with CERCLA because it imposed accountability on defendant, allowed restoration work to begin, and was consistent with preference for settlement).

Entry of the Consent Decree would ensure that the environmental benefits from the projects funded by the Decree will be achieved in the near term without the substantial expenditure of taxpayer and judicial resources that would be necessitated by litigation. *See Bragg v. Robertson*, 83 F. Supp. 2d 713, 717 (S.D. W. Va. 2011) ("[I]t is precisely the desire to avoid a protracted examination of the parties' legal rights that underlies entry of consent decrees. Both the parties and the general public benefit from the saving of time and money that results from the voluntary settlement of litigation"); *United States, et al. v. BP Prods. N. Am., Inc.*, No. 2:12-CV-207, 2012 WL 5411713, at *4 (N.D. Ind. Nov. 6, 2012) (consent decree "serves the public interest by providing these environmental benefits more quickly and at less cost than could be achieved through litigation… a risky proposition with uncertain results."). Finally, should new

12

information or conditions be discovered that indicate natural resource damages are of a different type or greater magnitude than previously determined by the Trustees, the Trustees remain able, subject to certain exceptions, to seek additional compensation from FMC and the SFAs, the responsible parties. Consent Decree ¶ 20, ECF No. 2.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs respectfully request the Court to sign the proposed Consent Decree at page 29 and enter it as a final judgment in this matter.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

/s/ John Sither
JOHN SITHER, D.C. Bar No. 431542
JEANNE T. COHN, D.C. Bar No. 475447
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Tel.: (202) 514-4160
Fax: (202) 514-0097
Jeanne.Cohn@usdoj.gov
John.Sither@usdoj.gov

Zachary T. Lee
Acting United States Attorney
Western District of Virginia

/s/ Laura Day Taylor
Assistant United States Attorney
VA Bar #94021

IL Bar #6289334
United States Attorney's Office
310 First Street
Roanoke, VA 24011
T: (540) 857-2976
Laura.taylor@usdoj.gov

FOR THE COMMONWEALTH OF VIRGINIA

<u>/s/ Katherine E. Kulbok</u>
Katherine E. Kulbok (VSB #90853)
Assistant Attorney General
Counsel of Record
Office of the Attorney General
202 North 9th Street
Richmond, Virginia 23219
(804) 225-3643 (telephone)
(804) 692-1647 (fax)
kkulbok@oag.state.va.us

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2025, I caused the foregoing Plaintiffs' Unopposed Motion to Enter Consent Decree to be filed with the Clerk of Court using the CM/ECF system, and sent copies by electronic mail to the following:

Steven M. Jawetz
BEVERIDGE & DIAMOND PC
1900 N Street, NW
Suite 100
Washington, DC 20036
SJawetz@bdlaw.com


*/s/ John Sither*
Senior Counsel
United States Department of Justice